UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

EASTERN DIVISION

| | |
|---|---|
| ANTONIO F. RIOS,<br><br>　　　　Plaintiff,<br><br>　　v.<br><br>NANCY A. BERRYHILL, Deputy Commissioner of Operations, performing duties and functions not reserved to the Commissioner of Social Security,[1]<br><br>　　　　Defendant. | Case No. ED CV 16-02622-DFM<br><br>MEMORANDUM OPINION AND ORDER |

Plaintiff Antonio Rios ("Plaintiff") appeals from the final decision of the Social Security Commissioner denying his applications for Social Security Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI"). For the reasons discussed below, the Commissioner's decision is reversed and this matter is remanded.

///

---

[1] On January 23, 2017, Nancy A. Berryhill became the Acting Social Security Commissioner. Thus, she is automatically substituted as the defendant under Federal Rule of Civil Procedure 25(d).

# I.
# BACKGROUND

In February 2013, Plaintiff filed applications for DIB and SSI alleging disability beginning on December 1, 2009. See Administrative Record ("AR") 213-27. His applications were denied initially and on reconsideration. See AR 121-32. Plaintiff then requested and received a hearing before an administrative law judge ("ALJ"), during which the ALJ heard testimony by Plaintiff, who was represented by counsel, and a vocational expert ("VE"). See AR 23-44. On August 14, 2015, the ALJ issued an unfavorable decision. See AR 103-15.

The ALJ determined that Plaintiff had severe impairments of carpal tunnel syndrome status post release, minor lumbar degenerative disc disease, mild osteoarthritis right knee status post arthroscopy, right shoulder osteoarthritis, chronic pain syndrome, and depressive disorder. See AR 105. The ALJ determined that Plaintiff retained the residual functional capacity ("RFC") to lift and carry 20 pounds occasionally and 10 pounds frequently; to sit, stand, and walk for 6 hours in an 8-hour day; to climb, bend, and stoop frequently, but not climb ladders, ropes, and scaffolds; to reach overhead with the right arm frequently; to reach, handle, and grasp with the right arm frequently; to perform unskilled work; and to avoid hazards. See AR 108. Based on the VE's testimony, the ALJ found that given Plaintiff's age, education, work experience, and RFC, Plaintiff could work as a cashier, cleaner, and marker. See AR 114-15. Thus, the ALJ found that Plaintiff was not disabled. See AR 115.

On November 1, 2016, the Appeals Council denied review of the ALJ's decision, which became the final decision of the Commissioner. See AR 1-8. Plaintiff then sought review by this Court. See Dkt. 1.

///

## II.

## DISCUSSION

The parties dispute whether the ALJ properly weighed the medical evidence, considered Plaintiff's symptom testimony, and determined that Plaintiff could do other work. See Plaintiff's Joint Stipulation, Dkt. 21 ("Plaintiff's JS") at 3-4.

**A. Medical Evidence**

Plaintiff argues that the ALJ failed to properly consider the opinions of his treating physicians, a workers' compensation examining physician, the state-agency reviewing physicians, and a psychiatric consultative examiner. See id. at 4-9.

**1. Applicable Law**

Three types of physicians may offer opinions in Social Security cases: those who treated the plaintiff, those who examined but did not treat the plaintiff, and those who did neither. See 20 C.F.R. §§ 404.1527(c), 416.927(c); Lester v. Chater, 81 F.3d 821, 830 (9th Cir. 1995) (as amended Apr. 9, 1996). A treating physician's opinion is generally entitled to more weight than an examining physician's opinion, which is generally entitled to more weight than a nonexamining physician's. See Lester, 81 F.3d at 830. When a treating or examining physician's opinion is uncontroverted by another doctor, it may be rejected only for "clear and convincing reasons." Carmickle v. Comm'r, Soc. Sec. Admin., 533 F.3d 1155, 1164 (9th Cir. 2008) (citing Lester, 81 F.3d at 830-31). Where such an opinion is contradicted, the ALJ may reject it for "specific and legitimate reasons that are supported by substantial evidence in the record." Id. (citations omitted); see also Garrison v. Colvin, 759 F.3d 995, 1012 (9th Cir. 2014). Moreover, "[t]he ALJ need not accept the opinion of any physician, including a treating physician, if that opinion is brief, conclusory, and inadequately supported by clinical findings." Thomas v. Barnhart, 278

F.3d 947, 957 (9th Cir. 2002); see also Tonapetyan v. Halter, 242 F.3d 1144, 1149 (9th Cir. 2001); Morgan v. Comm'r of Soc. Sec. Admin., 169 F.3d 595, 600 (9th Cir. 1999) ("Opinions of a nonexamining, testifying medical advisor may serve as substantial evidence when they are supported by other evidence in the record and are consistent with it."). The weight accorded to a physician's opinion depends on whether it is consistent with the record and accompanied by adequate explanation, the nature and extent of the treatment relationship, and the doctor's specialty, among other factors. See 20 C.F.R. §§ 404.1527(c), 416.927(c).

**2. Analysis**

  a.  Opinion of Dr. Ahmed

Plaintiff alleges that the ALJ erred by assigning less weight to treating physician Dr. Ahmed's July 2010 opinion. See Plaintiff's JS at 5. Specifically, Plaintiff contends that the ALJ did not cite any evidence that contradicts Dr. Ahmed's assignment of upper extremity limitations regarding "lifting, pushing, pulling, torqueing, squeezing, with the bilateral upper extremities as well as the limitations to sedentary type of work . . . impl[ying] limitations to lifting no more than 10 pounds, and standing and/or walking no more than 2 hours out of 8." Id.; see also AR 592. The Court finds that the ALJ gave several specific and legitimate reasons for discounting Dr. Ahmed's opinion.

  First, the ALJ detailed evidence showing that Plaintiff had experienced improvement in his back, knees, and hands after Dr. Ahmed's limitations assessment. See AR 109-10. For example, the ALJ cited Dr. Watkin's medical evaluation, which noted that Plaintiff underwent successful knee surgery in October 2010, was treated with six weeks of physical therapy, and by September 2011 had "full motion" and "an essentially normal clinical examination." AR 109 (citing AR 624, 646). The ALJ also cited conflicting medical evidence that by September 2011, Plaintiff no longer had "clinical

4

evidence of carpal tunnel syndrome in either [of his] wrists," and his back condition had improved such that he "could perform a full squat and walk on his heels and toes" and "had full range of motion and negative straight leg-raising test bilaterally." AR 109-10 (citing AR 640-41, 645-46). Such evidence of improvement suffices as a specific and legitimate reason to discount Dr. Ahmed's opinion. See Jones v. Colvin, 634 F. App'x 168, 170 (9th Cir. 2015) (upholding rejection of treating physicians' opinions where other evidence showed improvement).

The ALJ also stated that Dr. Ahmed did not provide any helpful limitations to assess Plaintiff's RFC. See AR 111. While Plaintiff correctly notes that Dr. Ahmed had assigned restrictions of "no forceful pushing, pulling, torqu[e]ing, squeezing, with right and left hand," AR 592, the ALJ's failure to address these restrictions was harmless error. As evidenced by his discussion of Plaintiff's improvement, "the ALJ would have reached the same result absent the error." Molina v. Astrue, 674 F.3d 1104, 1115 (9th Cir. 2012) (noting errors harmless where "it was clear they did not alter the ALJ's decision"); see also Marsh v. Colvin, 792 F.3d 1170, 1173 (9th Cir. 2015) (rejecting idea that "not mentioning a treating source's medical opinion precludes use of harmless error doctrine"); Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005) ("A decision of the ALJ will not be reversed for errors that are harmless."). Accordingly, reversal is not warranted on this ground.

    b. Opinion of Dr. Symonett

Plaintiff also alleges that the ALJ should have given more weight to the opinion of treating physician Dr. Symonett, who opined that Plaintiff could stand and sit for only 1 hour out of an 8-hour work day due to his need to lay down for symptom relief. See Plaintiff's JS at 6; see also AR 522. Plaintiff also argues that the ALJ failed to provide any "significant or legitimate rationale" for rejecting Dr. Symonett's limitations that Plaintiff should be "limited to no

more than occasional use of his upper extremities for activities such as handling, fingering, [and] reaching . . . [and] should not engage in a work setting in activities such as balancing, stooping, kneeling, crouching or crawling." Plaintiff's JS at 7; see also AR 524. The ALJ discredited Dr. Symonett's January 2013 and August 2014 opinions on grounds that they were unsupported by Dr. Symonett's examinations or other objective medical evidence and were inconsistent with the opinions of the treating physician Dr. Ahmed and the workers' compensation examining physician. See AR 111.

The ALJ reasonably assigned little weight to Dr. Symonett's medical opinions. Dr. Symonett regularly examined and treated Plaintiff between 2011 and 2014. See, e.g., AR 353-400, 499-512, 521-26, 536-39, 652-62. But nearly all of these examinations concerned Plaintiff's general health and not his allegedly disabling impairments. See, e.g., AR 356, 358 (cough); 360 (medication refills); 362-63 (medication refills, cold, runny nose, and flu shot); 364-69 (yellow bumps or pimples in mouth, medication refills, routine physical); 372 (cough, sore throat, hissing in lungs); 374 (mouth blisters); 377 (tongue blisters). When Dr. Symonett did report on Plaintiff's alleged disabling conditions, Dr. Symonett merely took note of Plaintiff's subjective complaints. See, e.g., AR 371 (complaints of hand pain and inability to extend fingers); 506 (complaints of back and muscle pain becoming increasingly worse); 536 (complaints of knee, back, arm, and hand pain). To the extent Dr. Symonett conducted any tests regarding Plaintiff's alleged impairments, the results were unremarkable. See, e.g., AR 401 (lumbar disc spaces "appear well maintained" and degenerative change "minor"). Accordingly, the ALJ did not err in rejecting Dr. Symonett's recommended work limitations, because they were "inadequately supported by clinical findings." Thomas, 278 F.3d at 957.

The ALJ also properly considered Dr. Ahmed's and Dr. Watkin's medical reports in assigning little weight to Dr. Symonett's. See AR 111

(finding Dr. Watkin's medical report "objective" in nature). It is the ALJ's province to synthesize the medical evidence. See Lingenfelter v. Astrue, 504 F.3d 1028, 1042 (9th Cir. 2007) ("When evaluating the medical opinions of treating and examining physicians, the ALJ has discretion to weigh the value of each of the various reports, to resolve conflicts in the reports, and to determine which reports to credit and which to reject."); Morgan, 169 F.3d at 603 (holding that ALJ was "responsible for resolving conflicts" and "inconsistencies between [doctors'] reports"). Where, as here, the evidence may be susceptible to more than one rational interpretation, the ALJ's decision must be upheld. See Burch, 400 F.3d at 679.

        c.     Opinion of Dr. Watkin

Plaintiff alleges that the ALJ erred by attributing great weight to the work restrictions imposed by Dr. Watkin, who conducted a medical examination of Plaintiff in September 2011 in connection with his workers' compensation case. Plaintiff argues that Dr. Watkin's relatively minor work restrictions were stated only in "worker[s' compensation] terminology, which does not directly translate to Social Security terminology as to work restrictions." Plaintiff's JS at 5. Plaintiff further argues that Dr. Watkin's assessment only described those limitations resulting from Plaintiff's work-related injuries—as opposed to any pre-existing or "degenerative[-]type" injuries. Id. at 5-6.

An "ALJ may not disregard a physician's medical opinion simply because it was initially elicited in a state workers' compensation proceeding, or because it is couched in the terminology used in such proceedings." Booth v. Barnhart, 181 F. Supp. 2d 1099, 1105 (C.D. Cal. 2002). But an ALJ is not bound to accept or apply a workers' compensation physician's status designation, such as temporary total disability, because such terms of art are "not equivalent to Social Security disability terminology." Dawson v. Colvin,

7

No. 14-00018, 2014 WL 5420178, at *5 (C.D. Cal. Oct. 23, 2014) (citing Desrosiers v. Sec. of Health & Human Servs., 846 F.2d 573, 576 (9th Cir. 1988)). An ALJ is required to "translate" such terms "into the corresponding Social Security terminology in order to accurately assess the implications of those opinions for the Social Security disability determination." Booth, 181 F. Supp. 2d at 1106 (citation omitted). The ALJ's decision does not need to contain an "explicit 'translation,'" but it should indicate that the ALJ recognized the differences between the workers' compensation and Social Security terminology and took those differences into account in evaluating the medical evidence. Id.

     Here, the ALJ assigned "great weight" to work restrictions barring "repetitive work at or above shoulder level . . . repetitive or forceful gripping and grasping, and . . . very heavy lifting and repeated bending and stooping." AR 110-11. While Plaintiff is correct that the ALJ should have "translate[d]" Dr. Watkin's work restrictions to the social security context, Booth, 181 F. Supp. 2d at 1106, any error was ultimately harmless. Nearly all of the ALJ's substantive discussion of Dr. Watkin's opinion pertained not to Plaintiff's ultimate work restrictions, which were couched in workers' compensation-specific terminology, but to Dr. Watkin's "orthopedic examinations" of Plaintiff and the objective test results derived therefrom. See AR 111. For example, with regard to Plaintiff's alleged knee pain, the ALJ cited Dr. Watkin's report, which noted that Plaintiff had "full motion" and an "essentially normal clinical examination." AR 109 (citing AR 646). The ALJ also discussed the objective test results relating to Plaintiff's alleged back pain: "ambulating with no antalgic component to [Plaintiff's] gait . . . could perform a full squat and walk on his heels and toes . . . had full range of motion and a negative straight leg-raising test bilaterally." Id. (citing AR 640-41). As to Plaintiff's hand pain, the ALJ noted that Plaintiff "had negative Phalen's test

bilaterally and a negative Finkelstein's maneuver" and that "there was no clinical evidence of carpal tunnel syndrome in either [of Plaintiff's] wrists." AR 110 (citing AR 639, 645). In sum, the ALJ's failure to explain Dr. Watkin's work restrictions in the social security context does not negate the ALJ's reliance on other aspects of Dr. Watkin's report to support the RFC determination. See Booth, 181 F. Supp. 2d at 1105 (citing Coria v. Heckler, 850 F.2d 245, 247-48 (3d Cir. 1984) ("[T]he ALJ should evaluate the objective medical findings set forth in the medical reports for submission with the worker's compensation claim by the same standards that s/he uses to evaluate medical findings in reports made in the first instance for the Social Security claim . . . .")); see also Macri v. Chater, 93 F.3d 540, 544 (9th Cir. 1996) (noting that when analyzing medical opinions using state workers' compensation terminology, the ALJ "is entitled to draw inferences 'logically flowing from the evidence'" (internal citations omitted)). Because Plaintiff has not shown how the ALJ's error would necessarily result in a different outcome, reversal is not warranted on this ground. See Burch, 400 F.3d at 679 ("A decision of the ALJ will not be reversed for errors that are harmless."); Molina, 674 F.3d at 111(noting that "the burden of showing that an error is harmful normally falls upon the party attacking the agency's determination").

     As to Plaintiff's contention that the ALJ erred because he failed to consider pre-existing injuries—i.e., those not stemming from Plaintiff's work injury—Plaintiff has not explained how consideration of pre-existing injuries would have resulted in a finding of disability. See Plaintiff's JS at 5. Notably, Plaintiff does not show how the cause of Plaintiff's injury, work-related or otherwise, affects Dr. Watkin's assessment of the degree of Plaintiff's allegedly disabling impairments such that the ALJ's determination would be different. Accordingly, the ALJ's decision must be upheld. See Molina, 674 F.3d at 111.
///

### d. Opinions of Psychiatric Consultative Examiner and State-Agency Reviewing Physicians

Last, Plaintiff alleges that the ALJ erred by giving little weight to the opinions of psychiatric consultative examiner Dr. Jarvis Ngati and state agency reviewing physicians Drs. Paul Cherry and Sidney Gold. Specifically, Plaintiff contends that the ALJ should have discussed Plaintiff's assigned moderate limitations regarding his ability "to accept instructions from supervisors . . . maintain concentration, attention, persistence, and pace . . . perform activities without special or additional supervision," "understand and remember detailed instructions," "maintain attention and concentration for extended periods," "perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances," and "carry out detailed instructions." AR 55-53, 78, 414. Plaintiff also argues that the ALJ should have addressed Plaintiff's mild to moderate limitations in "perform[ing] detailed and complex tasks" and his mild limitations in his "ability to deal with the usual stressors encountered in the work place, maintain regular attendance, and complete a normal work day or work week." AR 414. According to Plaintiff, these purported limitations prevent him from "working within a schedule . . . maintaining regular attendance, and performing work activities without special supervision," so the ALJ erred by failing to cite specific medical evidence to contradict these limitations. See Plaintiff's JS at 8-9.

Generally, an ALJ "need not discuss every piece of evidence." Botswick v. Berryhill, 677 F. App'x 344, 345 (9th Cir. 2017); see also Howard v. Barnhart, 341 F.3d 1006, 1012 (9th Cir. 2003) (noting that the "ALJ is not required to discuss evidence that is neither significant nor probative"). While the ALJ did not directly address each physician's mild or moderate limitations, the ALJ did provide specific and legitimate reasons for discounting aspects of each of their opinions. See AR 112-13. For example, the ALJ discounted Dr.

Ngati's recommended limitations for being "inconsistent with the mental status examination," in which Plaintiff exhibited "limited" positive symptoms—i.e., having a "somewhat sad" mood and "restricted" affect, but still being "able to recall three out of three items immediately and two out of three within five minutes," being able to "follow a three-step command," having "normal" speech, and being "fully oriented." AR 112 (citing AR 413-14). Upon consideration of Plaintiff's hearing testimony, the ALJ also discounted Dr. Cherry's and Dr. Gold's "moderate" mental restriction on Plaintiff's ability to conduct activities of daily living. See AR 113.

      Even if the ALJ erred by failing to directly discuss Plaintiff's other mild or moderate mental limitations, Plaintiff fails to show how such errors change the ALJ's RFC determination. Drs. Ngati, Cherry, and Gold noted several moderate mental limitations. But "[m]oderate mental functional limitations . . . are not per se disabling." Herrera-Schmitz v. Comm'r of Soc. Sec., No. 15-00333, 2015 WL 5258701, at *10 (N.D. Cal. Sept. 9, 2015) (citing cases) (alteration in original). Indeed, a claimant with moderate limitations can still function satisfactorily. See Nelson v. Colvin, No. 16-00594, 2016 WL 5942229, at *7 (N.D. Cal. Oct. 13, 2016); see also Cantu v. Colvin, No. 13-1621, 2015 WL 1062101, at *14 (N.D. Cal. Mar. 10, 2015) (noting that SSA "defines a 'moderate' limitation as there is more than a slight limitation in this area, but the individual can still function satisfactorily[;] the ALJ's explanation of 'moderate' limitation as one which still allows the individual to 'perform the function satisfactorily' was proper" (internal citations and alterations omitted)). Plaintiff's argument that the opinions and findings of Drs. Ngati, Cherry, and Gold are "critical" because of the VE's testimony that "an individual who would be off task, requiring additional work breaks which would accumulate to only 4 hours out of the work week would not be capable of maintaining employment" is misplaced. Plaintiff's JS at 9; see also AR 42.

Plaintiff cites to no evidence suggesting that mild to moderate mental limitations necessarily translates to spontaneous, "additional work breaks" totaling 4 hours. Plaintiff's JS at 9. Because Plaintiff has not shown how the result would be different absent the ALJ's error, the Court must defer to the ALJ's decision. See Burch, 400 F.3d at 679; Molina, 674 F.3d at 111. Accordingly, reversal is not warranted on this ground.

**B.     Symptom Testimony**

Plaintiff argues that the ALJ failed to properly consider Plaintiff's symptom testimony regarding his limitations and his need to lay down for pain relief during the day. See Plaintiff's JS at 10. Specifically, Plaintiff contends that the ALJ did not properly make a credibility determination and incorrectly weighed Plaintiff's activities of daily living. See id. at 11.

**1.     Applicable Law**

The court engages in a two-step analysis to review the ALJ's evaluation of the plaintiff's symptom testimony. See Trevizo v. Berryhill, 871 F.3d 664, 678 (9th Cir. 2017). First, the ALJ must determine whether the plaintiff has presented objective medical evidence of an underlying impairment that could reasonably be expected to produce the symptoms alleged. See id. If the plaintiff meets the first step and there is no affirmative evidence of malingering, the ALJ must provide specific, clear and convincing reasons for discrediting the plaintiff's complaints. See Robbins v. Soc. Sec. Admin., 466 F.3d 880, 883 (9th Cir. 2006). "General findings are insufficient; rather, the ALJ must identify what testimony is not credible and what evidence undermines the [plaintiff's] complaints." Brown-Hunter v. Colvin, 806 F.3d 487, 493 (9th Cir. 2015) (as amended) (citation omitted). The ALJ may consider, among other factors, a plaintiff's reputation for truthfulness, inconsistencies in his testimony, inadequately explained failures to seek treatment or to follow a prescribed course of treatment, his work record, and his daily activities. See Light v. Soc.

Sec. Admin., 119 F.3d 789, 792 (9th Cir. 1997) (as amended); Smolen v. Chater, 80 F.3d 1273, 1284 n.8 (9th Cir. 1996). If the ALJ's credibility finding is supported by substantial evidence in the record, the reviewing court "may not engage in second[ ]guessing." Thomas, 278 F.3d at 959.

**2. Analysis**

At his hearing, Plaintiff testified that he suffers from daily pain in his back, knees, and hands. See AR 31. To help with his pain, Plaintiff goes on 15- to 20-minute walks, waters his plants outside, and lies down daily. See AR 31, 36. Plaintiff also affirmed that he could not "go for eight hours sitting, standing and walking." AR 35. The ALJ gave specific, clear and convincing reasons for discrediting Plaintiff's symptom testimony.

First, the ALJ permissibly discounted Plaintiff's credibility because his daily activities were inconsistent with his alleged limitations. Plaintiff acknowledged at his hearing that he could water his plants, walk around his house, prepare light meals such as sandwiches and soup, help wash dishes and do laundry on occasion, go grocery shopping with his wife, and drive. See AR 29, 31-33. The extent of these domestic activities support the ALJ's conclusion that Plaintiff was less than fully credible when reporting the severity of his alleged disabling functional limitations. See Curry v. Sullivan, 925 F.2d 1127, 1130 (9th Cir. 1990) (finding that claimant's ability to "take care of her personal needs, prepare easy meals, do light housework, and shop for some groceries . . . may be seen as inconsistent with the presence of a condition which would preclude all work activity") (citing Fair v. Bowen, 885 F.2d 597, 604 (9th Cir. 1989)). Where, as here, a "claimant engages in daily activities inconsistent with the alleged symptoms," an ALJ may discredit his testimony of totally disabling impairment. Molina, 674 F.3d at 1112 (citation omitted).

Second, the ALJ noted that Plaintiff's allegations of disabling functional limitations in his knees, lower back, and hands were unsupported by objective

13

medical evidence. "Although lack of medical evidence cannot form the sole basis for discounting pain testimony, it is a factor that the ALJ can consider in his credibility analysis." Burch, 400 F.3d at 681; see also Rollins v. Massanari, 261 F.3d 853, 857 (9th Cir. 2001). With regard to Plaintiff's knee pain, the ALJ discussed the history of Plaintiff's injury and cited a September 2011 doctor's report, which noted that Plaintiff "ha[d] full motion and an essentially normal clinical examination . . . further invasive treatment is not really warranted." AR 646. The ALJ also validly considered Plaintiff's subsequent diagnoses of only mild osteoarthritis in 2013 and restless leg syndrome in 2015, for which Plaintiff was treated with medication. See AR 109, 552, 657. As to Plaintiff's back pain, the ALJ discussed records showing that, as of September 2011, Plaintiff could ambulate with no antalgic component to his gait, had a full range of motion, could perform a full squat, could walk on his heels and toes satisfactorily, and exhibited negative straight-leg raising. See AR 109 (citing AR 640-41, 646). That report also noted that no further treatment for Plaintiff's lower back was warranted. See AR 646. And for Plaintiff's hand pain, the ALJ properly considered objective medical evidence that Plaintiff had a negative Finkelstein's maneuver (bilaterally), had a negative Phalen's test (bilaterally), and, as of September 2011, did not have any clinical evidence of carpel tunnel syndrome in either of his wrists. See AR 110 (citing AR 645). These records and findings support the ALJ's conclusion that, while Plaintiff may suffer from pain stemming from his back, knees, and hands, his condition is likely not disabling. See Miske v. Berryhill, No. 17-00019, 2018 WL 1392873, at *5 (E.D. Cal. Mar. 20, 2018) (finding knee pain not disabling where diagnostic notes showed only mild osteoarthritis); Garza v. Colvin, No. 14-4425, 2015 WL 1285307, at *9 (C.D. Cal. Mar. 20, 2015) (finding allegations of disabling pain not credible where claimant exhibited negative straight-leg raising, no antalgic gait, and normal standing on heel and toe). The ALJ validly weighed

14

inconsistency with the objective medical evidence as one of several factors supporting his decision to discount Plaintiff's symptom testimony. See Burch, 400 F.3d at 681.

Finally, the ALJ permissibly discounted Plaintiff's symptom testimony because Plaintiff's "symptoms of pain were managed conservatively with pain medication." AR 110; see also, e.g., AR 379, 381-82, 386, 389, 542, 552, 556-57. "[E]vidence of 'conservative treatment' is sufficient to discount a claimant's testimony regarding severity of an impairment." Parra v. Astrue, 481 F.3d 742, 751 (9th Cir. 2007) (internal citation omitted); see also Fair, 885 F.2d at 604 (finding that claimant's allegations of persistent, severe pain and discomfort were belied by "minimal conservative treatment"). Notwithstanding Plaintiff's argument to the contrary, the ALJ did not err in concluding that a relatively conservative form of treatment like pain medication belied Plaintiff's allegation of disabling back pain. See Parra, 481 F.3d at 750-51 (treatment of ailments with over-the-counter pain medication is "conservative treatment" sufficient to discount testimony); Medel v. Colvin, No. 13-2052, 2014 WL 6065898, at *8 (C.D. Cal. Nov. 13, 2014) (considering Vicodin and Tylenol as part of a conservative treatment routine).

On appellate review, the Court's role is not to reweigh the evidence supporting or undermining Plaintiff's credibility. Instead, the Court merely asks whether the ALJ properly identified clear and convincing reasons for discrediting Plaintiff's subjective testimony. See Smolen, 80 F.3d at 1284. When clear and convincing reasons are given, this Court may not engage in second-guessing. See Thomas, 278 F.3d at 959; see also Fair, 885 F.2d at 604. Having relied on Plaintiff's daily activities, the objective medical evidence, and Plaintiff's conservative treatment history, the ALJ provided sufficiently specific, clear and convincing reasons for discounting Plaintiff's subjective

15

complaints about the severity of his knee, back, and hand pain. Thus, reversal on these grounds is not warranted.

**C.     Step-Five Determination**

Plaintiff contends that the ALJ erred at step five of the sequential analysis because the ALJ's RFC precludes jobs with a reasoning level of 3. See Plaintiff's JS at 12-13. Plaintiff also argues that his illiteracy and limited English-speaking ability severely erodes the actual numbers of the representative occupations available to Plaintiff. See id. at 13.

**1.     Applicable Law**

At step five of the sequential evaluation process, the Commissioner must demonstrate that the claimant can perform work that exists in "significant numbers" in the national or regional economy, taking into account the claimant's RFC, age, education, and work experience. Tackett v. Apfel, 180 F.3d 1094, 1100-01 (9th Cir. 1999) (citation omitted); 20 C.F.R. §§ 404.1560(c), 416.960(c). In making a disability determination, the Dictionary of Occupational Titles ("DOT") is the primary source for "information about the requirements of work in the national economy." Massachi v. Astrue, 486 F.3d 1149, 1153 (9th Cir. 2007) (citing SSR 00-4p, 2000 WL 1898704, at *2 (Dec. 4, 2000)). The ALJ may also use VE testimony to obtain occupational evidence. Id.

The ALJ asks the VE to identify representative jobs in the national economy that a hypothetical individual with the same characteristics as the claimant would be able to do. See Tackett, 180 F.3d at 1101. The vocational expert's testimony may constitute substantial evidence of the claimant's ability to perform such jobs if the ALJ's hypothetical question included all of the claimant's limitations supported by the record. See Robbins, 466 F.3d at 886; Lewis v. Apfel, 236 F.3d 503, 517 (9th Cir. 2001) ("If the record does not support the assumptions in the hypothetical, the vocational expert's opinion

16

has no evidentiary value.").

An ALJ may not rely on a vocational expert's testimony that deviates from pertinent job descriptions in the DOT unless the record contains "persuasive evidence to support the deviation." Pinto v. Massanari, 249 F.3d 840, 846 (9th Cir. 2001) (quoting Johnson v. Shalala, 60 F.3d 1428, 1435 (9th Cir. 1995)). The ALJ must affirmatively ask the vocational expert whether his or her opinion contradicts information in the DOT, and must "obtain a reasonable explanation for any apparent conflict." Massachi, 486 F.3d at 1152-53 (citing Social Security Ruling ("SSR") 00–4p). "Evidence sufficient to permit such a deviation may be either specific findings of fact regarding the claimant's residual functionality, or inferences drawn from the context of the expert's testimony." Light, 119 F.3d at 793 (citations omitted).

### 2. Analysis

Here, the ALJ concluded that Plaintiff could work as a cashier, cleaner, or marker, which are all light, unskilled (Specific Vocational Preparation ("SVP") 2) occupations and have 820,000, 130,000, and 270,000 positions, respectively, in the national economy. See AR 115; see also DOT 211.462-010; DOT 323.687-014; DOT 209.587-034. Plaintiff contends, however, that the ALJ erred by failing to consider Plaintiff's limited language abilities. See Plaintiff's JS at 12-13. Plaintiff further argues that the ALJ erroneously stated that the cashier occupation has a SVP of 2 and that Plaintiff could perform jobs with a reasoning level of 3. See id. at 13.

As an initial matter, the ALJ correctly reported that cashier, cleaner, and marker occupations are SVP 2. See DOT 211.462-010, 323.687-014, 209.587-034. Moreover, Plaintiff erroneously conflates the ALJ's restriction of "unskilled work" with a preclusion to perform work with a reasoning level of 3. Plaintiff's JS at 13 (claiming the RFC "would preclude a job with a reasoning level of 3, given [the ALJ's] restriction to 'unskilled work'"). "The

17

reasoning level of a job is distinct from its skill level." See Standafer v. Colvin, No. 14-1541, 2016 WL 633854, at *3 (C.D. Cal. Feb. 16, 2016) (noting that "skill level" corresponds to SVP level). Plaintiff has not, however, shown where or how the ALJ restricted Plaintiff only to jobs having a maximum reasoning level of 3. Accordingly, reversal on these grounds is not warranted.

As to Plaintiff's language restrictions, the Court finds that the ALJ did not sufficiently explain how Plaintiff, who "is unable to communicate in English," could work as a cashier, cleaner, or marker, all of which require at least a language level of 1. AR 114; see also DOT 211.462-010, 323.687-014, 209.587-034. Language level 1 is the lowest language development contemplated by the DOT and requires that an individual be able to recognize 2,500 words, read at a rate of about 100 words per minute, and print and speak simple sentences. See Castillo v. Comm'r of Soc. Sec., No. 14-1566, 2016 WL 54387, at *4 (E.D. Cal. Jan. 5, 2016); see also Donahue v. Barnhart, 279 F.3d 441, 445 (7th Cir. 2002) ("[B]asic literacy [defined as a vocabulary of 2,500 words, the ability to read about 100 words a minute, and the ability to print simple sentences] is essential for every job in the economy."). A plain reading of the DOT's language level 1 definition requires language ability more advanced than someone who cannot speak English. The VE's representative occupations of cashier, cleaner, and marker thus present an obvious conflict with Plaintiff's limitation in communicating in English. See Gutierrez, 844 F.3d at 808 (to constitute a conflict, the difference between the VE's testimony and the DOT's listings must concern DOT requirements which are essential, integral, or expected).

This apparent conflict triggered the ALJ's obligation to inquire further. See Lamear v. Berryhill, 865 F.3d 1201, 1205 (9th Cir. 2017). That Plaintiff's prior jobs within the past 15 years also required at least a language level of 1 does not excuse the ALJ's obligation. Likewise, the ALJ may not blindly rely

18

on the VE's vocational interrogatory response, wherein the VE attests that an individual with Plaintiff's age, education, work experience, RFC, and inability "to communicate in English" could necessarily perform as a cashier, cleaner, or marker. AR 346-47. "[I]n order for an ALJ to rely on a job description in the Dictionary of Occupational Titles that fails to comport with a claimant's noted limitations, the ALJ must definitively explain this deviation." Pinto, 249 F.3d at 847; see also Diaz v. Berryhill, No. 14-4216, 2018 WL 1187530, at *7 (C.D. Cal. Mar. 7, 2018) (remanding for "ALJ's failure to resolve the conflict between the VE's testimony and the language requirements outlined by the DOT"); Chaoprasrihomkhao v. Berryhill, No. 16-1778, 2018 WL 287303, at *6 (E.D. Cal. Jan. 4, 2018) (finding error where the VE did not provide an explanation for how a claimant could perform work identified by VE given his limited English); Yang v. Berryhill, No. 16-1195, 2017 WL 5878203 (E.D. Cal. 2017). Because the ALJ neglected to do so here, remand is warranted so that the ALJ may "definitively explain" the impact of Plaintiff's language skills on his ability to find and perform alternative work. See Pinto, 249 F.3d at 847.

## D. Remand for Further Proceedings Is Appropriate

The decision whether to remand for further proceedings is within this Court's discretion. See Harman v. Apfel, 211 F.3d 1172, 1175-78 (9th Cir. 2000) (as amended). Where no useful purpose would be served by further administrative proceedings, or where the record has been fully developed, it is appropriate to exercise this discretion to direct an immediate award of benefits. See id. at 1179 (noting that "the decision of whether to remand for further proceedings turns upon the likely utility of such proceedings"); Benecke v. Barnhart, 379 F.3d 587, 593 (9th Cir. 2004).

A remand is appropriate, however, where there are outstanding issues that must be resolved before a determination of disability can be made and it is not clear from the record that the ALJ would be required to find the claimant

19

disabled if all the evidence were properly evaluated. See <u>Bunnell v. Barnhart</u>, 336 F.3d 1112, 1115-16 (9th Cir. 2003); <u>see also</u> <u>Garrison</u>, 759 F.3d at 1021 (explaining that courts have "flexibility to remand for further proceedings when the record as a whole creates serious doubt as to whether the claimant is, in fact, disabled within the meaning of the Social Security Act."). Here, remand is appropriate for the ALJ to inquire further of the VE regarding the apparent conflict identified above and conduct such other proceedings as are warranted.

## III.
## CONCLUSION

For the reasons stated above, the decision of the Social Security Commissioner is REVERSED and the action is REMANDED for further proceedings.

Dated: August 8, 2018

_____
DOUGLAS F. McCORMICK
United States Magistrate Judge